# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| The Cincinnati Insurance Company, an Ohio Corporation, | ) ) ) | |
| Plaintiff, | ) ) | **ORDER** |
| vs. | ) ) ) | Case No. 1-16-cv-340 |
| B & B Paving, Inc. d/b/a B & B Dirtworks, Michael Baumgartner, Nancy Baumgartner, | ) ) ) | |
| Defendants. | ) | |

The Cincinnati Insurance Company ("Cincinnati") previously moved for summary judgment against B & B Paving, Inc., Michael Baumgartner, and Nancy Baumgartner (collectively "the Defendants"). (Doc. No. 31). In a previous order, the court granted that motion as to Cincinnati's breach of contract claim but denied the motion as to the amounts of damages Cincinnati sought to collect. Cincinnati Ins. Co. v. B & B Paving, Inc., Case No. 1-16-cv-340, 2017 WL 42468565 at *6 (D.N.D. September 25, 2017). The court directed Cincinnati to provide supplemental briefing as to the amount of damages collectable under North Dakota law. That briefing, along with that from the Defendants, is now before the court. (Doc. Nos. 38, 39, 41).

## I.    BACKGROUND

Generally speaking, Cincinnati and the Defendants executed two surety bonds for various construction services to be provided by the Defendants. As is relevant to this case, those bonds are identical. Cincinnati and the Defendants also executed corresponding indemnity agreements, under which the Defendants agreed to indemnify Cincinnati "and hold it harmless from and against any and all liability, losses, costs, damages, attorneys' fees, disbursements and expenses of whatever kind

or nature which the Surety may sustain or incur by reason or in consequence of having executed or procured the execution of the" Surety Bonds. (Doc. Nos. 1-1, 1-2). The Defendants executed these indemnity agreements jointly and severally. Cincinnati ultimately received and paid out claims under the bonds totaling $82,064.95. (Doc. No. 33-1). Cincinnati also incurred $13,985.70 in costs, expenses, and attorneys fees in discharging its obligations under the surety bonds and in prosecuting this breach of contract case under the indemnity agreements. In sum, Cincinnati sought judgment for $96.050.65, which was inclusive of the paid bond claims, attorneys' fees, and costs and expenses.

In the court's previous order, the court granted Cincinnati's motion for summary judgment insofar as the Defendants breached the indemnity agreements for not indemnifying Cincinnati. The court further concluded Cincinnati was entitled to a judgment in the amount of $82,064.95, which represented the amounts paid out under the bonds. The court, however, denied, without prejudice, Cincinnati's motion as to the remaining $13,985.70 because Cincinnati had not properly itemized the expenses comprising that total and the court was unsure about whether North Dakota law allowed for the collection of that amount. The court directed Cincinnati to provide supplemental briefing and affidavits as to the itemization issue and the court's collectability concerns.

## II.     DISCUSSION

The court has reviewed the supplemental itemized statement of loss submitted by Cincinnati. (Doc. No. 38-2). The statement consists of three categories of losses: (1) amounts paid out under the surety bonds; (2) investigation expenses; and (3) attorneys' fees.[1] In aggregate, Cincinnati seeks

---

[1] In the court's previous order, it suggested that attorneys' fees incurred in investigating the claims made under the surety bonds may be collectable notwithstanding N.D.C.C. § 28-26-04. Cincinnati Ins. Co., 2017 WL 42468565 at *6 (noting whether "N.D.C.C. § 28-26-04 might also preclude Cincinnati's collection of attorney's fees incurred prior to its collection efforts, including investigating the claims made under the Surety Bonds, is also debatable."). Cincinnati's statement of loss does not identify any attorneys' fees that might fit within that category. Accordingly, the court need not decide whether such fees should be treated differently than any other fees Cincinnati now seeks to collect.

2

$97,582.15, which is more than it sought in its previous motion for summary judgment and which presumably reflects further attorneys' fees incurred in this matter. As discussed above, the court has already concluded Cincinnati is entitled to $82,064.95, which represents the amounts paid out under the surety bonds, so the court will not address Cincinnati's first category of loss any further. Thus, the court is left to consider the collectability of the balance of Cincinnati's requested amount.

### A. Investigative Expenses

Cincinnati's second category of expenses, in its entirety, consists of a $27.00 charge characterized as an investigation expense. The Defendants have not made any serious effort to argue this charge does not fall within the category of losses collectable under the indemnity agreements, and such amounts likely do no fall under the invalidation dictated by N.D.C.C. § 28-26-04. See First Nat. Bank of Decorah v. Laughlin, 61 N.W. 473, 475 (N.D. 1894) (concluding "the fact that no charges for collection were mentioned in the statute, other than attorney's fees, shows inferentially that attorney's fees alone were in the mind of the legislature; and we are of the opinion that we would not be justified in concluding from that statute, or from any other, that expenses of collection aside from attorney's fees are against the policy of express law."). Thus, the court concludes Cincinnati is entitled to additional damages in the amount $27.00.

### B. Attorneys' Fees

Cincinnati's third category of expenses includes $15,490.20 worth of attorneys' fees. The court previous denied Cincinnati's request for attorneys' fees based upon the potential application of N.D.C.C. § 28-26-04. That section provides:

> Any provision contained in any note, bond, mortgage, security agreement, or other evidence of debt for the payment of an attorney's fee in case of default in payment or in proceedings had to collect such note, bond, or evidence of debt, or to foreclose

3

such mortgage or security agreement, is against public policy and void.

The court had concern about the collectability of Cincinnati's requested fees when reading N.D.C.C. § 28-26-04 with Hartford Acc. & Indem. Co. v. Anderson, 155 N.W.2d 728, 735-36 (N.D. 1968). In Hartford, a surety issued a construction bond to principals who also executed an indemnity agreement containing an attorneys' fees provision. After concluding the principals/indemnitors breached the indemnity agreement by not providing proper indemnification, the trial court taxed the indemnitors with attorneys' fees pursuant to the indemnity agreement. In considering that aspect of the case, the North Dakota Supreme Court stated:

> Our study of this case has disclosed that the judgment includes attorney fees, and this is perhaps because the indemnity agreement so provides. It is our view, however, that the legislature intended, under N.D.C.C. Sec. 28-26-04, to prohibit a provision for the payment of attorney fees in an instrument such as that involved in this case.

Hartford, 155 N.W.2d at 736. With that conclusion, the court remanded the case "with instructions to modify the judgments to eliminate therefrom the amounts included for attorney fees." Id.

In light of Hartford and N.D.C.C. § 28-26-04, the court left Cincinnati with the task of showing the collectability of its requested amounts under North Dakota law. Cincinnati's supplemental briefing goes through considerable pain to differentiate bonds and indemnification agreements, with that differentiation allegedly rendering N.D.C.C. § 28-26-04 inapplicable under the circumstances. Despite its compelling argument, Cincinnati concedes Hartford "applied N.D.C.C. § 28-26-04 to invalidate attorneys' fees under an indemnity agreement for a surety's losses in connection with construction bonds." (Doc. No. 38 p. 9). Notwithstanding this concession, Cincinnati asserts "Hartford did not provide any explanation or reasoning for its finding that the indemnity agreement fell within the ambit of the N.D.C.C. § 28-26-04." (Doc. No. 38 p. 9).

4

Cincinnati also criticizes the Defendants for not providing "a single substantive reason or discussion as to why this Court must apply the flawed ruling in the 1968 [Hartford] case to the instant action." (Doc. No. 41 p. 1). The court will provide that elementary reason.

Cincinnati brought this action in federal court under the diversity jurisdiction afforded to this court by 28 U.S.C. § 1332(a). In so sitting, this court must interpret state law and is "bound by rulings on that issue from the state's highest court." Simmons Foods, Inc. v. Indus. Risk Insurers, 863 F.3d 792, 798 (8th Cir. 2017). This binding is irrespective of whether the court thinks such precedent is "wise or in accordance with the supposed national trend." Id.; see also Universal Underwriters Ins. Co. v. Wagner, 367 F.2d 866, 874 (8th Cir. 1966) (stating a "federal court reviewing state law must accept the law as rendered by such state court in diversity cases, even if it feels the decision to be erroneous."). Whatever exception Cincinnati takes with the alleged lack of reasoning underlying Hartford, the North Dakota Supreme Court's holding is undeniable. Good, bad, or indifferent, this court has a duty to apply that holding because this court lacks the authority to secondguess North Dakota law once the North Dakota Supreme Court has spoken.

The closest Cincinnati comes to addressing this fundamental judicial limitation is its argument the North Dakota Supreme Court's holding in T.F. James Co. v. Vakoch, 2001 ND 12, 628 N.W.2d 298 limited the scope of N.D.C.C. § 28-26-04. In T.F. James, the court considered whether a commercial lease, and an attorneys' fees provision contained therein, fell within the meaning of "evidence of debt" as set forth at N.D.C.C. § 28-26-04, thus precluding recovery of attorneys' fees incurred in enforcing the lease. The court engaged in the following relevant discussion:

> [¶ 7] This Court has evaluated N.D.C.C. § 28–26–04 in numerous contexts. See Principal Residential Mortgage, Inc. v. Nash, 2000 ND 21, ¶ 26, 606 N.W.2d 120 (mortgages); Production Credit Ass'n v. Obrigewitch, 462 N.W.2d 115, 118

5

(N.D.1990) (loan agreements); Commercial Bank of Mott v. Stewart, 429 N.W.2d 402, 403 (N.D.1988) (retail installment contract); Farmers Union Oil Co. v. Maixner, 376 N.W.2d 43, 48–49 (N.D.1985) (personal guarantee); and Hartford Accident and Indemnity Co. v. Anderson, 155 N.W.2d 728, 735–36 (N.D.1968) (indemnity agreement). Although this Court has never decided whether a commercial lease constitutes evidence of a debt, we find instructive the interpretations of "evidence of debt" or similar language in other jurisdictions. Some jurisdictions have concluded a lease is evidence of debt, but their conclusions allowed, rather than disallowed, attorney fees. See, e.g., Holmes v. Bogino, 219 Ga.App. 858, 467 S.E.2d 197, 198–99 (1996) (commercial lease was evidence of indebtedness allowing enforcement of agreement to pay attorney fees); Stillwell Enterprises, Inc. v. Interstate Equip. Co., 300 N.C. 286, 266 S.E.2d 812, 817–18 (1980) (lease agreement was evidence of indebtedness allowing imposition of attorney fees); see also Squyres Constr. Co., Inc. v. Chemical Bank, 596 S.W.2d 283, 284 (Tex.Civ.App.1980) (a lease is evidence of debt for purposes of transacting business under the Texas corporations code). We, however, are guided by the majority of decisions providing a narrower rather than a more expansive interpretation of what constitutes evidence of debt. . . .

[¶ 11] Although the lease agreement in this case was in writing, it is not an "instrument." See N.D.C.C. §§ 41–03–03 and 41–03–04 (defining instrument); see also N.D.C.C. § 28–26–04 (indicating attorney fees in an instrument are void). Courts have recognized some documents are not evidence of debt if the documents fail to meet the definition of a note, bond, or other instrument. See, e.g., In Re Dvorak, 176 B.R. 929, 934 (Bankr.D.Kan.1994) (stating an indemnity agreement is not evidence of indebtedness and does not meet the definition of note or bond).

[¶ 12] We agree with the district court that the lease agreement set forth an agreement promising payment from the lessee to the lessor. We, however, do not believe "evidence of debt" in N.D.C.C. § 28–26–04 is intended "to be viewed as a catchall rubric embracing any and all writings, not otherwise specifically listed, which represent an obligation on the part of the writer to do something for the holder." See United States v. Jones, 450 F.2d 523, 524 (5th Cir.1971) (construing the term "evidence of indebtedness" in the context of its entire definition); see also id. (indicating commercial airline tickets, although redeemable for cash, are not evidence of indebtedness).

[¶ 13] A commercial lease is distinguishable from a mortgage, security agreement, bond, note, or loan agreement. The state constitution or statutes define whether a contractual provision is against public policy. Johnson v. Peterbilt of Fargo, Inc., 438 N.W.2d 162, 163 (N.D.1989). If the legislature chooses to declare that attorney fee provisions in commercial lease agreements violate public policy, it may do so. In the absence of legislative or constitutional direction to the contrary, we decline to

expansively interpret public policy to void attorney fee agreements in commercial leases.

Id. at ¶¶ 7, 11-13 (emphasis added in ¶ 11). On this discussion, particularly the court's citation to In Re Dvorak, 176 B.R. 929, 934 (Bankr.D.Kan.1994) and its explanatory parenthetical "(stating an indemnity agreement is not evidence of indebtedness and does not meet the definition of note or bond)", Cincinnati argues finding the indemnity agreements "constitute 'evidence of debt' would contradict the holding in [T.F. James] and would subject virtually any agreement with an obligation to make payment" to N.D.C.C. § 28-26-04. (Doc. No. 38 p. 11) (emphasis contained in original).

Absent from Cincinnati's discussion is an argument T.F. James affirmatively overruled Hartford such that Hartford is no longer good law. Certainly, the North Dakota Supreme Court stated some courts "have recognized some documents are not evidence of debt if the documents fail to meet the definition of a note, bond, or other instrument" and then went on to cite Dvorak for the proposition that an "indemnity agreement is not evidence of indebtedness and does not meet the definition of note or bond." T.F. James, at ¶ 11. The court, however, did not explicitly hold an indemnity agreement related to a bond could not fall under the scope of N.D.C.C. § 28-26-04. Moreover, given the ultimate issue for disposition in T.F. James, the court's discussion is arguably dicta. At best, T.F. James casts doubt on Hartford's precedential value and sets forth the legal framework for a possible future reversal of Hartford, but it certainly did not overrule Hartford. As such, Hartford is still the law of the land in North Dakota and this court remains bound to follow it.

Cincinnati's citations to other cases in which the North Dakota Supreme Court has affirmed the awarding of attorney's fees pursuant to an indemnity agreement are of no avail. For instance, Cincinnati cites Hoge v. Burleigh County Water Mgmt. Dist., 311 N.W.2d 23 (N.D. 1981), where

7

the North Dakota Supreme Court affirmed the awarding of attorneys' fees pursuant to an indemnity agreement executed as a part of a land sale for a water project. Despite the agreement not containing an attorneys' fees provision, the court concluded such an award was warranted based upon the parties' implied intent in executing the indemnity agreement. Id. at 31-32. However, as this court outlined in its previous order, case law from the North Dakota Supreme Court seemingly draws a distinction between the awarding of attorneys' fees in agreements related to the instruments set forth at N.D.C.C. § 28-26-04 and similar agreements unrelated to the same instruments. See Farmers Union Oil Co. of New England v. Maixner, 376 N.W.2d 43, 48 (N.D. 1985) (stating, because "the personal guarantee is a document relating to the payment of a debt, the attorneys' fees were awarded in violation of Section 28-26-04, N.D.C.C. The indemnity agreement in Hoge, on the other hand, did not relate to the payment of a debt and as such was not controlled by Section 28-26-04."). This holds true with how the court has treated indemnification agreements. Compare Hoge, 311 N.W.2d 23 (allowing attorneys' fees in an indemnification agreement related to a water project); Minex Res., Inc. v. Morland, 518 N.W.2d 682, 689 (N.D. 1994) (allowing attorney's fees in an indemnification agreement related to expenses for developing an oil well) with Hartford, 155 N.W.2d at 735-36 (disallowing attorneys' fees in an indemnification agreement related to a construction bond). Any inconsistencies flowing from this bifurcation, and Cincinnati's corresponding objections, are concerns for the North Dakota Supreme Court, not this court.

At bottom, Cincinnati has not provided a persuasive reason for why Hartford, and its application of N.D.C.C. § 28-26-04, is not applicable under the circumstances of this case. Its argument the North Dakota Supreme Court wrongly decided Hartford is not for this court to decide. The court concludes the attorneys' fees provisions within the indemnity agreements are void under

8

N.D.C.C. § 28-26-04 as contrary to North Dakota public policy. Thus, the court concludes Cincinnati is not entitled to the requested attorneys' fees.

### III. CONCLUSION

As the court initially concluded, Cincinnati is entitled to damages in the amount of $82,064.95 for amounts paid out under the bonds. As above concluded, Cincinnati is also entitled to an additional $27.00 for investigative expenses incurred. It, however, is not entitled to any attorneys' fees. Thus, Cincinnati is entitled to a total sum of $82,091.95 against the Defendants jointly and severally. Under N.D.C.C. § 32-03-04, Cincinnati may be entitled to prejudgment interest on that sum at the legally prescribed rate. According to N.D.C.C. § 47-14-05, that amount is six percent per annum. If Cincinnati seeks this prejudgment interest, it should provide the court with a supplemental calculation of total damages for purposes of entering final judgment.

**IT IS SO ORDERED.**

Dated this 22nd day of January, 2018.

*/s/ Charles S. Miller, Jr.*
Charles S. Miller, Jr., Magistrate Judge
United States District Court
