# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| The Cincinnati Insurance Company, an Ohio Corporation, | )<br>)<br>) |
| Plaintiff, | )<br>) **ORDER DENYING REQUEST FOR**<br>) **CERTIFICATION OF QUESTIONS** |
| vs. | )<br>) Case No. 1-16-cv-340 |
| B & B Paving, Inc. d/b/a B & B Dirtworks, Michael Baumgartner, Nancy Baumgartner, | )<br>)<br>) |
| Defendants. | ) |

Before the court is The Cincinnati Insurance Company ("Cincinnati")'s Motion to Certify Questions of Law to the North Dakota Supreme Court, wherein Cincinnati requests the court certify four questions to the North Dakota Supreme Court. (Doc. No. 43). B & B Paving, Inc., Michael Baumgartner, and Nancy Baumgartner ("the Defendants") oppose the motion. (Doc. No. 46).

## I. BACKGROUND

The court has previously set forth the entire factual background of this dispute. (Doc. Nos. 27, 42); see also Cincinnati Ins. Co. v. B & B Paving, Inc., Case No. 1-16-cv-340, 2017 WL 4246865 (D.N.D. September 25, 2017) ("Cincinnati I"); Cincinnati Ins. Co. v. B & B Paving, Inc. Case No. 1-16-cv-340, 2018 WL 504400 (D.N.D. January 22, 2018) ("Cincinnati II").

Generally speaking, Cincinnati and the Defendants executed two surety bonds for various construction services to be provided by the Defendants. As is relevant to this case, those bonds are identical. Cincinnati and the Defendants also executed corresponding indemnity agreements, under which the Defendants agreed to indemnify Cincinnati "and hold it harmless from and against any and all liability, losses, costs, damages, attorneys' fees, disbursements and expenses of whatever kind

1

or nature which the Surety may sustain or incur by reason or in consequence of having executed or procured the execution of the" Surety Bonds. (Doc. Nos. 1-1, 1-2). The Defendants executed these indemnity agreements jointly and severally. Cincinnati ultimately received and paid out claims under the bonds totaling $82,064.95. (Doc. No. 33-1). Cincinnati also incurred $13,985.70 in costs, expenses, and attorneys fees in discharging its obligations under the surety bonds and in prosecuting this breach of contract case under the indemnity agreements. In sum, Cincinnati sought judgment for $96.050.65, which was inclusive of the paid bond claims, attorneys' fees, and costs and expenses.

In Cincinnati I, the court granted Cincinnati's motion for summary judgment insofar as the Defendants breached the indemnity agreements for not indemnifying Cincinnati. The court further concluded Cincinnati was entitled to judgment in the amount of $82,064.95, which represented the amounts paid out under the bonds. The court, however, denied Cincinnati's motion as to the remaining $13,985.70 without prejudice because Cincinnati had not itemized the requested expenses to the court's satisfaction and the court had doubts about whether North Dakota law allowed for the collection of that amount. The court directed Cincinnati to provide supplemental briefing and affidavits as to the itemization issue and the court's collectability concerns.

In Cincinnati II, the court considered the supplemental briefing and affidavits submitted by Cincinnati. (Doc. Nos. 38, 41). The supplemental itemized statement of loss indicated Cincinnati sought three categories of damages: (1) amounts paid out under the surety bonds; (2) investigation expenses; and (3) attorneys' fees. As concluded in Cincinnati I, the court concluded Cincinnati was entitled to $82,064.95 under category (1). The court further concluded Cincinnati was entitled to $27.00 under category (2). The court, however, concluded Cincinnati was not entitled to attorney's fees under category (3) because N.D.C.C. § 28-26-04, as applied by the North Dakota Supreme Court

in Hartford Acc. & Indem. Co. v. Anderson, 155 N.W.2d 728 (N.D. 1968), invalidated the attorney's fees provisions Cincinnati sought to enforce. Accordingly, the court concluded Cincinnati was entitled to $82,091.95 and directed Cincinnati to provide a calculation of potentially applicable prejudgment interest under N.D.C.C. § 32-03-04 and N.D.C.C. § 47-14-05 for purposes of entering final judgment. Instead of doing so, Cincinnati filed the instant motion.

## II. DISCUSSION

Cincinnati requests the court certify the following four questions to the North Dakota Supreme Court under N.D. R. App. P. 47(a):

> 1. Is an indemnity agreement "evidence of a debt" for purposes of N.D.C.C. § 28-26-04?
>
> 2. Does an indemnity agreement meet the definition of a bond or note for purposes of N.D.C.C. § 28-26-04?
>
> 3. Does N.D.C.C. § 28-26-04 invalidate or void an attorneys' fee provision in an indemnity agreement executed in favor of a surety as consideration for the surety's insurance of a surety bond?
>
> 4. Does N.D.C.C. § 28-26-04 permit a surety to recover attorneys' fees and costs in an action based on contractual indemnity, for losses incurred by a surety in discharging its obligations under a bond and in enforcing the terms of the indemnity agreement, where the indemnity agreement provides for attorneys' fees and legal costs?

(Doc. No. 43). Cincinnati argues certification is warranted because of a "grave conflict in the precedent created by the Supreme Court of North Dakota in whether attorneys' fees provisions in indemnity agreements are subject to the State's invalidation statute, N.D.C.C. § 28-26-04." (Doc. No. 44 p. 2). The Defendants argue certification is unwarranted because Hartford plainly holds attorney's fees provisions contained in indemnity agreements associated with surety bonds are invalid under N.D.C.C. § 28-26-04, which answers the questions Cincinnati seeks to certify.

3

Cincinnati makes its request for certification under N.D. R. App. P. 47(a), which provides:

> The supreme court may answer questions of law certified to it by the United States Supreme Court, a court of appeals of the United States, a United States district court, or the highest appellate or intermediate appellate court of any other state, when requested by the certifying court and the following conditions are met:
> (1) questions of law of this state are involved in any proceeding before the certifying court which may be determinative of the proceeding;
> (2) it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of this state.

In addition to these standards for certification, the Eighth Circuit has guided:

> Whether a federal court should certify a question to a state court is a matter of discretion. See Perkins v. Clark Equip. Co., 823 F.2d 207, 209 (8th Cir.1987). As the D.C. Circuit has stated: "The most important consideration guiding the exercise of this discretion . . . is whether the reviewing court finds itself genuinely uncertain about a question of state law . . . ." Tidler v. Eli Lilly & Co., 851 F.2d 418, 426 (D.C.Cir.1988). We have expressly held that without a "close" question of state law or the lack of state sources, a federal court should determine all the issues before it. Perkins, 823 F.2d at 209.

Johnson v. John Deere Co., 935 F.2d 151, 153-54 (8th Cir. 1991). The court may also consider the likelihood of a legal issue recurring, whether the legal issue contains competing aims of state policy, and whether the state supreme court has had occasion to entertain the legal issue. See Hatfield v. Bishop Clarkson Memorial Hosp., 701 F.2d 1266 (8th Cir. 1983). The United States Supreme Court has further guided the ultimate aim of certification is to "save time, energy, and resources and help[] build a cooperative judicial federalism." Lehman Bros. v. Schein, 416 U.S. 386, 391 (1974).

Under this court's broad discretion, the court will not certify Cincinnati's proposed questions because certification would be contrary to N.D. R. App. P. 47(a)(2) and a disservice to the above considerations. In Hartford Acc. & Indem. Co. v. Anderson, 155 N.W.2d 728 (N.D. 1968), a district court assessed attorney's fees under an indemnity agreement after an indemnitee paid out certain

4

amounts under a construction bond. The North Dakota Supreme Court held that was improper:

> Our study of this case has disclosed that the judgment includes attorney fees, and this is perhaps because the indemnity agreement so provides. It is our view, however, that the legislature intended, under N.D.C.C. Sec. 28-26-04, to prohibit a provision for the payment of attorney fees in an instrument such as that involved in this case.

Hartford, 155 N.W.2d at 736. With that conclusion, the court remanded the case "with instructions to modify the judgments to eliminate therefrom the amounts included for attorney fees." Id.

The certification process allows federal courts to posit questions of state law that are unanswered or too close to call. The Eighth Circuit has described this consideration as the most important factor to guide the court's decision on certification, a sentiment that is, in fact, codified at N.D. R. App. P. 47(a)(2). Each of Cincinnati's proposed questions, though probing from different angles, center on the same issue—whether N.D.C.C. § 28-26-04 disallows collection of attorney's fees in an indemnity agreement executed as consideration for issuance of a surety bond. Hartford's holding clearly answers that question. Cincinnati's proposed questions essentially recycle its previous complaints about the alleged lack of reasoning underlying Hartford's holding. (Doc. Nos. 38, 41). Although Hartford's reasoning could have been more clear, the path to a particular outcome is of little consequence in considering certification when the North Dakota Supreme Court has already dictated the end result. Rule 47(a)(2), N.D. R. App. P., does not allow certification simply because a federal litigant thinks the North Dakota Supreme Court wrongly decided an issue or could have better explained its rationale for a decision; it only allows certification where "there is no controlling precedent." Hartford is that controlling precedent.

Ostensibly recognizing this limitation, Cincinnati next goes on to considerable pain to argue subsequent decisions from the North Dakota Supreme Court have undermined Hartford to the extent

5

it can no longer be considered controlling precedent. In particular, Cincinnati again relies on T.F. James Co. v. Vakoch, 2001 ND 12, 628 N.W.2d 298. Cincinnati also relies on a number of other cases from the North Dakota Supreme Court allegedly showing "the grave inconsistency in North Dakota precedent on the applicability of N.D.C.C. § 28-26-04 . . . ." (Doc. No. 44 p. 8). As the court previously stated, however, T.F. James only "casts doubt on Hartford's precedential value and sets forth the legal framework for a possible future reversal of Hartford," but T.F. James did not overrule Hartford and the most pertinent portions of that opinion are arguably *dicta*. Cincinnati II, at *4. The other cases cited by Cincinnati are of no further avail. Other than its disagreement with the outcome of the case and its alleged lack of reasoning, Cincinnati still has not provided any "persuasive reason for why Hartford, and its application of N.D.C.C. § 28–26–04, is not applicable under the circumstances of this case." Cincinnati II, at *5. Hartford's holding is undeniable and the certification allowed for at N.D. R. App. P. 47(a) does not exist to round off the rough edges of North Dakota law where existing precedent directly addresses an issue.[1]

The court also notes the timing of Cincinnati's current request militates against certification. The Eighth Circuit has taken a particularly jaundiced view of parties seeking certification only after suffering an adverse ruling in federal court. Perkins v. Clark Equip. Co., 823 F.2d 207, 210 (8th Cir.

---

[1] Further, even if the current justices of the North Dakota Supreme Court have doubts about Hartford, the more likely result may very well be the court concluding it is a matter for the state legislature to change, if it is so inclined. As the court again most recently restated in Olson v. Job Service North Dakota, 2013 ND 24, 827 N.W.2d 36:
> [¶ 50] The legislature is presumed to know how the courts have interpreted a statute. See Lamb v. State Bd. of Law Examiners, 2010 ND 11, ¶ 10, 777 N.W.2d 343 (" 'Where courts of this State have construed [a] statute and such construction is supported by the long acquiescence on the part of the legislative assembly and by the failure of the assembly to amend the law, it will be presumed that such interpretation of the statute is in accordance with legislative intent.' ") (quoting City of Bismarck v. Uhden, 513 N.W.2d 373, 376 (N.D.1994).

Id. at ¶ 50, see also Western Nat. Mut. Ins. Co. v. Univ. of N.D., 2002 ND 63, 643 N.W.2d 4 (same and citing additional cases). Cincinnati's money is probably better spent hiring a good lobbyist.

1987) (stating only "in limited circumstances should certification be granted after a case has been decided."). Although Cincinnati makes vague allegations about the collectability of attorney's fees being unresolved, (Doc. No. 44 p. 4), the court already concluded N.D.C.C. § 28-26-04 invalidated the requested attorney's fees. Cincinnati II, at *5. Instead of asking the court to certify the requested questions at the time the court identified the collectability issue in Cincinnati I, Cincinnati requested certification only after the court invalidated the implicated attorney's fees provision in Cincinnati II. Cincinnati cannot use the certification process as an opportunity for a do-over after losing the "gamble" of having this court resolve the issue. Perkins, 823 F.2d at 210.

The court also concludes certification would not be a good use of judicial resources. Cincinnati could have clearly brought this action in North Dakota state court in the first instance, which would have afforded Cincinnati the path it now seeks to the North Dakota Supreme Court. This action came to federal court only because Cincinnati sought a federal forum, and the court has already spent the judicial resources necessary to get this case near closure. Certification at this juncture would render any expenditure of judicial resources by the North Dakota Supreme Court duplicative, a result that is wasteful with both courts' respective dockets seemingly getting busier by the day. Cincinnati's requested certification is not in keeping with judicial economy.

Finally, after entertaining Cincinnati's multiple briefings on the alleged failings and inconsistencies of North Dakota law, particularly Hartford, the court must remind Cincinnati how this litigation reached its current posture. That is, Cincinnati failed to invoke its contractual right to file this action in Ohio and have Ohio law govern. Cincinnati I, at **2-3.

### III. CONCLUSION

On the foregoing, the court **DENIES** Cincinnati's "Motion to Certify Questions of Law to

7

the North Dakota Supreme Court." (Doc. No. 43). As previously directed, Cincinnati should submit supplement calculations of potentially applicable prejudgment interest for entering final judgment. Cincinnati shall do so within seven (7) days of today's date or that amount will be waived.

**IT IS SO ORDERED.**

Dated this 4th day of April, 2018.

*/s/ Charles S. Miller, Jr.*
Charles S. Miller, Jr., Magistrate Judge
United States District Court
